UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                                                           )<br>          Plaintiff,                            )<br>                                                           )<br>     v.                                                )<br>                                                           )<br>JESSICA CURRY,                        )<br>                                                           )<br>          Defendant.                        )  | No. 6:19-CR-34-REW<br><br>OPINION & ORDER |

\*\*\* \*\*\* \*\*\* \*\*\*

On July 1, 2021, the Court sentenced Defendant Jessica Curry to 110 months' imprisonment for conspiracy to distribute methamphetamine (an aggravated quantity) and possession of a firearm in furtherance of that drug trafficking offense. *See* DE 78 (Judgment). Curry, currently incarcerated at FPC Alderson, *pro se* moved for compassionate release. *See* DE 80 (Motion). 18 U.S.C. § 3582 governs her request.

As amended by the First Step Act of 2018 (Pub. L. No. 115-391, 132 Stat. 5194 (2018)), 18 U.S.C. § 3582 requires an inmate seeking compassionate release either to "fully exhaust[ ] all administrative rights to appeal a failure of the Bureau of Prisons (BOP) to bring a motion on the defendant's behalf" or to wait "30 days from the receipt of such a request by the warden" before filing a motion with the Court. 18 U.S.C. § 3582(c)(1)(A). The Sixth Circuit has held that the exhaustion requirement, though non-jurisdictional, is a "mandatory condition" and, when "properly invoked," it "must be enforced." *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (internal quotation marks omitted). Only two exceptions apply: waiver or forfeiture. *See id.*; *see also Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 (2017) ("The terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not

1

synonymous. Forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right.") (internal alterations and quotation marks omitted).

The Court, unsure whether Curry satisfied the 18 U.S.C. § 3582(c)(1)(A) exhaustion requirement, ordered the Government to respond only on the issue of exhaustion (or, if applicable, waiver of exhaustion). *See* DE 79 (Order). The Government responded, indicating Curry requested compassionate release from the warden in early January. *See* DE 81 at 1 (Exhaustion Response). The Government, therefore, "d[id] not contest that Curry has exhausted her administrative remedies and that her motion for compassionate release is properly before the Court." *Id.* at 2. The Court then ordered the Government to respond on the merits and gave Curry time to reply. *See* DE 82 (Order). The Government responded. *See* DE 83. Curry did not reply; but her brother sent a letter supporting the motion, which the Court has considered. *See* DE 89 (Letter). The matter is ripe for review.

### I. Legal Background

Generally, a "court may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). However, Congress has established certain narrow exceptions. One such exception provides:

> [T]he court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A) (relevant portions included).[1] By separate statute, Congress in 1984 explicitly directed the United States Sentencing Commission to define "extraordinary and compelling reasons for sentence reduction[.]" 28 U.S.C. § 994(t); *see id.* at (a)(2) (directing promulgation of "policy statements regarding . . . the appropriate use of . . . (C) the sentence modification provisions set forth in . . . [§] 3582(c) of title 18").

The Sentencing Commission responded in 2006, explaining, in relevant part, that "[e]xtraordinary and compelling reasons warrant the reduction; . . . [if the] defendant is not a danger to the safety of any other person or to the community . . . ; and [t]he reduction is consistent with this policy statement." U.S.S.G. § 1B1.13 (2006); *see also United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020). Over the next twelve years, the Commission left that policy statement unchanged while constructing a list of elucidative circumstances constituting "extraordinary and compelling reasons" in the §1B1.13 application notes. *See Jones*, 980 F.3d at 1104.

When the most recent edition of the Guidelines (2018, unchanged in 2021 edition) issued, § 3582(c) allowed only the BOP to move for compassionate release. *Id*. That changed when Congress passed the First Step Act, enabling prisoners to circumvent the typically languid BOP and petition courts directly. PL 115-391, 132 Stat 5194; *see also Jones*, 980 F.3d at 1104. Before the Commission could update the Guidelines to reflect this statutory change, "the forces of law and nature collided," and the COVID-19 pandemic gave rise to thousands of prisoner-initiated compassionate release requests. *See Jones*, 980 F.3d at 1100.

As a result of the statute leapfrogging the Guidelines, reviewing courts faced a question: Does § 1B1.13, written with only BOP-initiated release requests in mind, count as an "applicable

---

[1] This is a provision Congress broadened (through a direct federal court portal) as part of the First Step Act of 2018, a criminal justice reform measure passed on December 21, 2018. *See* PL 115-391, 132 Stat 5194.

3

policy statement" to guide courts' review of prisoner-initiated compassionate release requests? The Sixth Circuit gave a negative answer in *Jones*. *See* 980 F.3d at 1109. As a result, district courts have (at least until the Sentencing Commission updates the Guidelines), "full discretion . . . to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id*.

Accordingly, the Sixth Circuit established a "three-step inquiry" for prisoner-initiated compassionate release requests.[2] The Court must determine: (1) whether "extraordinary and compelling reasons" warrant a sentence reduction, (2) whether release, if granted, would be "consistent with applicable policy statements issued by the sentencing commission,"[3] and (3) whether release is appropriate in light of the § 3553(a) sentencing factors. *Id.* at 1101.[4] For now, because "the § 1B1.13 policy statement[] is no longer a requirement courts must address[,]" the Court answers only "two questions: (1) whether extraordinary and compelling circumstances merit a sentence reduction; and (2) whether the applicable § 3553(a) factors warrant such a reduction." *United States v. Hampton*, 985 F.3d 530, 531 (6th Cir. 2021).

---

[2] In *Jones*, the district judge "assumed for the sake of argument that extraordinary and compelling reasons existed in Jones's case" before proceeding to decide the case based on a balancing of the § 3553(a) factors. 980 F.3d at 1108. Accordingly, the Court does not see a requirement that each step must occur in a particular sequence. Indeed, the Court could deny by finding any one of the three steps unmet. Granting release, though, requires a positive finding at each one. *See United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021) ("If the court finds that the defendant fails at *any* one of these three steps, it need not address the others before denying the motion.") (emphasis in original) (citing *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021)).

[3] Because § 1B1.13 no longer applies here, step two is something of a phantom, at least until a new iteration of the Guidelines issues. In the Court's view, Curry would not on this record have passed the § 1B1.13 stringent filter. The Court may still consult the Guidelines; the Court simply recognizes that the Guidelines do not presently provide a mandatory analytical gate.

[4] Section 1B1.13 also directs courts reviewing BOP-initiated compassionate release requests to determine, pursuant to 18 U.S.C. § 3142(g), whether granting relief would pose a risk to the safety of others or the community. Per *Jones*, the § 3142(g) evaluation is not explicitly required when reviewing prisoner-initiated § 3582(c) requests. But much of this calculus emerges in the mandatory § 3553(a) evaluation.

The Sixth Circuit has provided much guidance to help district courts define "extraordinary and compelling reasons" justifying compassionate release. *See United States v. Hunter*, 12 F.4th 555, 562–63 (6th Cir. 2021). Importantly, *Hunter* opined that "the text and structure of § 3582(c)(1)(A) limit a district court's discretion to define 'extraordinary and compelling' in two ways[.]" *Id.* at 562. First, non-retroactive changes in the law are not "extraordinary and compelling reasons" to grant a compassionate release motion. *Id.* "Second, facts that existed when the defendant was sentenced cannot later be construed as 'extraordinary and compelling' justifications for a sentence reduction." *Id.* In any § 3582 action, the defendant, as the movant, bears the burden of establishing eligibility for a reduction in sentence. *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013). The *Hunter* Court referenced the "ordinary meaning" of the controlling statutory adjectives "extraordinary and compelling." 12 F.4th at 562 (respectively, "most unusual, far from common, . . . having little or no precedent" and "forcing, impelling, driving"). The discretion extended is an exercise in judgment not an act of whim. *See id.*

**II.  Discussion**

Curry's seeks compassionate release for two reasons: (1) family circumstances, and (2) medical conditions including COVID-19 susceptibility. *See* DE 80. The Court has carefully considered the full briefing and all attachments or related filings.

**A.  Curry's Family Circumstances**

First, Curry argues that her family circumstances justify a reduced sentence. *See* DE 80 at 1-3. Specifically, she highlights her family's struggle to care for her two children. *See id.* at 2-3. Curry's father passed away recently. *See id.* at 1. Further, Curry's mother allegedly was arrested

in December 2021.[5] *See id.* at 2. Although the Presentence Investigation Report indicated that Curry's brother would serve as her sons' primary caregiver, *see* DE 77 at ¶ 46 (Sealed PIR), Curry claims her parents were also involved. *See* DE 80 at 2-3. Now, given the recent changes, Curry's brother and sister-in-law "have no help with my children and are struggling" and "desperately need me home now more than ever." *Id.* at 3.[6]

Although the Court is no longer bound to follow U.S.S.G. § 1B1.13 after *Jones*, the Court finds the Guidelines' examples of extraordinary and compelling family circumstances at least instructive.[7] 980 F.3d at 1109. The Sentencing Commission underscored two scenarios where a defendant's family circumstances would be extraordinary and compelling. *See* U.S.S.G. § 1B1.13, comment (n.1). The first scenario arises when an imprisoned defendant's minor children may not receive adequate care because the children's primary caregiver dies or becomes incapacitated. *Id.* The second scenario occurs when an imprisoned defendant's spouse or registered partner can only receive adequate care from the defendant. *Id.* Neither scenario supports Curry's early release here.

---

[5] This does not signify the mother's ongoing status, but the Court treats her, for analysis, as detained.

[6] To further support Curry's motion, her brother, Travis, wrote to the Court to illuminate the circumstances regarding care for the children. *See* DE 89.

[7] U.S.S.G. § 1B1.13 Application Note 1 reads:

> Extraordinary and Compelling Reasons. Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
> (A) . . .
> (C) Family Circumstances.
>     (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>     (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or the registered partner

U.S.S.G. § 1B1.13, comment (n.1).

Regarding the first, the Court is sympathetic that Curry's father passed away and is cognizant that her mother was recently placed in jail. However, absent evidence that Curry alone would care for these children, the Court cannot justify her release. *See United States v. Lemon*, No. 4:16-CR-0239, 2021 WL 1060142, at *2 (N.D. Ohio Mar. 18, 2021) (finding "the death of a minor child's caregiver only amounts to an 'extraordinary and compelling reason' when the defendant has provided documentation that they are the only available caregiver for the child"). Generally, "compassionate release is intended for situations in which a 'child is at risk of harm or will not be cared for' absent a sentence reduction." *United States v. Montgomery*, No. 5: 17-082-DCR, 2020 WL 6491653, at *2 (E.D. Ky. Nov. 4, 2020). Courts have therefore consistently denied a sentence reduction in like circumstances when it is apparent other caregivers can provide for the defendant's children. *See, e.g.*, *United States v. Rourke*, No. 15-10085-02-JWB, 2021 WL 3129599, at *3 (D. Kan. July 23, 2021).

Here, Curry's brother and sister-in-law remain as the caregivers to Curry's sons. *See* DE 80 at 3; *see also* DE 89. Curry's parents may have previously lightened the load. *See* DE 80 at 2-3. However, the plan at sentencing[8] was for the brother to be the caregiver and custodian; that status persists. Travis Curry surely faces added strain here, but that is a difficult, but common, aspect of the consequences from crime and not a reason for release.

The commentary to § 1B1.13 is a useful, nonbinding reference point, but the Court has independently assessed whether Curry presents extraordinary and compelling reasons beyond § 1B1.13's guidance. The Court has often noted that family strain is a regrettable cost of crime. *See United States v. Cole*, 6:17-CR-58-REW, at DE 168 (E.D.K.Y. January 20, 2021); *see also*

---

[8] In some ways, then, this unchanged status would run into *Hunter*'s bar. However, the Court assessed the argument because of changes in relative to Curry's parents and their potential roles.

7

*United States v. Bennett*, 6:19-CR-00042-REW, at DE 106 (E.D.K.Y. February 1, 2021) (denying compassionate release despite the increased strain on family care presented by the defendant's custodial sentence). The difficulties here reflect that reality. Accordingly, the Court does not find that Curry's family circumstances present an extraordinary and compelling reason for early release.

### B. Curry's Medical Circumstances

Next, Curry argues that her medical circumstances relative to the COVID-19 pandemic justify compassionate release. *See* DE 80. Curry does not cite in her motion specific medical ailments that make her vulnerable to COVID-19. *See id.* However, in her request to the Warden, Curry cited "obesity and [being] a smoker" as reasons to justify release. *See* DE 81-1 at 1. Curry's medical records objectively support obesity but do not mention prior smoking (nor does Curry's Presentence Investigation Report).[9] *See* DE 85-1 at 80 (Sealed Medical Records); *see also* DE 78.

When Curry petitioned the Warden on January 3, 2022, she was fully vaccinated with the "COVID-19 Janssen Vaccine." *See* DE 83-1 (Curry's BOP Immunizations Record); DE 80 at 3-5. The vaccine typically eliminates COVID-19 risk as an avenue for § 3582 relief.[10] *See United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022) (highlighting that COVID-19 is not grounds for compassionate release with "vaccines now available to federal prisoners"—particularly when the defendant is fully vaccinated); *United States v. Lemons*, 15 F.4th 747, 750 (6th Cir. 2021) (stating "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to

---

[9] Additionally, the medical records indicate that, as of January 25, 2022, Curry's health problems included: "[s]chizophrenia," "[u]nspecified mood [affective] disorder," "[a]stigmatism," "[a]llergic rhinitis," "[d]ental caries," and "[p]eriapical abscess with sinuses." DE 85-1 at 80.

[10] *COVID-19 Vaccines Work*, CTR. FOR DISEASE CONTROL AND PREVENTION (Dec. 23, 2022) https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (highlighting that "currently approved or authorized COVID-19 vaccines are safe and effective and reduce your risk of severe illness.").

8

the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' to warrant a sentence reduction."). Curry claims the COVID-19 booster shot is not available. *See* DE 80 at 4. However, the BOP COVID-19 website indicates "[i]nmates have also been offered booster shots in accordance with CDC guidance."[11] *See United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021) (quoting *Lemons* to affirm denying compassionate release when the COVID-19 vaccine was readily available to inmates at the defendant's facility).

Turning to Curry's medical ailments, courts have found an "extraordinary and compelling" reason for early release based on a disproportionately widespread COVID-19 outbreak (or other disease) within a prison, a highly vulnerable inmate,[12] or the appropriate combination of those two factors. *See, e.g.*, *United States v. Herring*, No. 6:14-cr-008, 2020 WL 6886256, at *2 (E.D. Ky. Nov. 24, 2020); *United States v. White*, No. 18-20183, 2020 WL 7240904, at *2 (E.D. Mich. Dec. 9, 2020). Such justification does not apply here. This is particularly true given the application and availability of the protective vaccine.

Regarding widespread COVID-19 outbreaks, as of April 14, 2022, the BOP reports that FPC Alderson has no positive COVID-19 cases among inmates or staff.[13] Therefore, the facility maintains a "Level 1" operation level (least severe) with "[m]inimal [m]odifications" to facility operations.[14] The website also indicates that 604 inmates and 77 staff have been fully inoculated

---

[11] *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Apr. 14, 2022).
[12] *People with Certain Medical Conditions*, CTR. FOR DISEASE CONTROL AND PREVENTION (Feb. 25, 2021) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (documenting that smoking, and obesity are risk factors that could make someone more likely to get severely ill from COVID-19).
[13] *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Apr. 14, 2022).
[14] *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Apr. 14, 2022).

against COVID-19.[15] Thus, given vaccine prevalence and access in the relevant inmate population,[16] the lack of COVID-19 cases at the facility, and the minimal operational alterations, the numbers here do not signify a release basis.

As to vulnerability, courts routinely deny compassionate release motions alleging similar health conditions. *See*, *e.g.*, *United States v. Olive*, No. 3-12-CR-00048, 2021 WL 4311218, at *2-*4 (M.D. Tenn. Sept. 22, 2021) (finding that a schizophrenic and elderly inmate that was previously sick with COVID-19 could not establish his health was extraordinary or compelling); *see also United States v. McGee*, No. 5: 16-095-DCR, 2020 WL 5535871, at *2 (E.D. Ky. Sep. 15, 2020) (denying compassionate release during COVID-19 based on obesity, among other things). Further, Curry is actively receiving treatment at the BOP for her various health concerns. *See* DE 85-1 at 86 (chronicling Curry's medications). Each case and each person are different. The Court has evaluated Curry's status and health and—particularly given her vaccination status—rejects the § 3582 predicate finding. Curry does not meet the first step in the two-part inquiry.

### C.  18 U.S.C. § 3553(a) Factors

Even if the Court found Curry's reasons extraordinary and compelling, the Court would not here release. At the sentencing hearing, the Court assessed the full record and forged a parsimonious sentence compliant with 18 U.S.C. § 3553(a) and governing law. *See* DE 78. That result reflected all sentencing factors in the context of Curry's offense—possessing a firearm (loaded) while conspiring to distribute an aggravated quantity of methamphetamine in her community. *See* DE 77 at 5-6. Each crime was a Class A offense.  Given Curry's record, details

---

[15] *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Apr. 14, 2022).
[16] *FPC Alderson*, FED. BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/ald/ (last visited Apr. 14, 2022) (indicating a total inmate population of 625).

of the crime, and additional considerations in the docket, the Court imposed a valid sentence beneath the otherwise mandatory minima (180 months, on the abutting counts). *See* DE 78. Curry's offense level was calculated, in part, by holding her accountable for 0.5 to 1.5 kilograms of a methamphetamine mixture. *Id.* at ¶¶ 20. Curry's criminal history lacked violence, but she offended while serving another criminal sentence. *Id.* at ¶¶ 35–39.

The Court at sentencing fully considered Curry's personal history, genuine commitment to personal growth, community support, health, family relationships, and early introduction to drugs. The Court accounted for bond compliance and lack of prior significant criminality, and recommended vocational and educational opportunities, given Curry's demonstrated promise. *See* DE 78 at 2. The Court credited Curry for all mitigators (as shown in the significant departure then added variance) but also guarded and served the need to show crime gravity, to deter, to promote respect for law, and to punish—the key drivers behind the sentence.

The § 3553(a) factors here cut against early release. Curry has served roughly 30% of her sentence. *See* DE 83-2 at 1-2. The Court parsimoniously crafted its judgment to follow the Congressional sentencing priorities and address all § 3553 purposes, each of which demanded attention and address. To release Curry now would improperly empty the judgment of efficacy and depreciate the § 3553(a) values, as articulated at sentencing only nine months ago. Curry's motion does not displace the Court's prior factorial review. Thus, even if Curry demonstrated extraordinary and compelling reasons for relief, the Court would reject her motion under the required consideration of applicable § 3553(a) factors. The Court is hopeful that Curry can pay her debt to society and emerge prepared for a productive and contributing life; the debt must first be paid. The record here does not support Curry's early release.

### III.     Conclusion

The Court, considering the full record, making the stated findings, and in its discretion, **DENIES** DE 80 and rejects Curry's request for a reduced sentence.

This the 14th day of April, 2022.

Signed By:
*Robert E. Wier*   /s/ REW
United States District Judge